104 Ark.App. 301

**Katrina PARKER, Gene Graves, and Laura Graves, Appellants**

v.

**SOUTHERN FARM BUREAU CASUALTY INS. CO. and Farm Bureau Mutual Insurance Co. of Arkansas, Inc., Appellees.**

**No. CA 08–568.**

Court of Appeals of Arkansas.

Feb. 4, 2009.

Blair & Stroud, by Herbert David Blair, Batesville; and Tom Thompson, Batesville, for appellant.

Watts, Donovan & Tilley, P.A., by David M. Donovan, Little Rock, for appellees.

JOHN B. ROBBINS, Judge.

This appeal arises out of the grant of summary judgment to two insurance companies (Southern Farm Bureau Casualty Insurance Company and Farm Bureau Mutual Insurance Company of Arkansas, Inc., collectively "Farm Bureau" and the appellees herein) regarding two policies owned by Gene and Laura Graves. For purposes of this appeal, the operative facts are not in material dispute and are viewed most favorably to appellant, Katrina Parker. We affirm in part and reverse in part and remand for further proceedings.

The insureds, Gene and Laura Graves, resided in rural Stone County, as did their neighbors, Ron and Katrina Parker. The relationship was not harmonious. On the morning of August 24, 2005, Mr. Graves was on his land shooting dogs that had been attacking his sheep. Graves believed that the aggressive dogs belonged to the Parkers. Although Mr. Graves remained on his land, at some point he was near the fence line, whereupon the Parkers emerged from their house. Mr. Parker fired a pistol shot, while Mrs. Parker attempted to return inside the Parker residence. Graves intentionally returned fire toward Mr. Parker, which shot killed Mr. Parker.[1] The bullet passed through Mr. Parker and struck Mrs. Parker, which seriously and permanently injured her.

Appellant Katrina Parker filed a negligence suit against Mr. Graves in Stone County Circuit Court, attempting to acquire monetary relief for her damages. Mr. Graves submitted a claim on two insurance policies, both homeowner's and general liability, seeking to have Farm Bureau provide a defense and indemnity. Farm Bureau initially mounted a defense on behalf of Mr. Graves.

 Then, Farm Bureau filed an independent declaratory judgment action in Pulaski County Circuit Court, seeking to have the trial court declare that there was no obligation on Farm Bureau's part to defend or indemnify its insureds. Declaratory judgment is typically used to determine the obligations of the insurer under a policy of insurance. *See Martin v. Equitable Life Assurance Society*, 344 Ark. 177, 40 S.W.3d 733 (2001). All interested parties must be named in a declaratory-judgment case. Ark.Code Ann. § 16–111–106 (Repl.2006). Farm Bureau named its in-

---

1. After reviewing the evidence, the prosecuting attorney declined to prosecute Mr. Graves on the basis that he acted in self-defense.

sureds and Katrina Parker as defendants. This Pulaski County Circuit Court lawsuit is the subject of the present appeal.

It is undisputed that Mr. and Mrs. Graves purchased insurance coverage under a homeowner's policy and general liability policy with Farm Bureau that were in force at the time of the shooting. Farm Bureau presented the exclusionary provisions in each policy, arguing that there was no duty to defend or indemnify for Mr. Graves's intentional acts that resulted in bodily harm or property damage. Farm Bureau moved for summary judgment. Mr. and Mrs. Graves as well as Mrs. Parker responded in resistance to the motion. Each of them also counterclaimed, requesting that the trial judge declare that the policies provided coverage for this incident, or at least did not unambiguously exclude coverage. A hearing was conducted before the Pulaski County Circuit Court, and after taking the issue under advisement, the trial judge entered summary judgment on Farm Bureau's behalf.

The trial judge determined that the insurance policies were unambiguous, that the material facts were undisputed, and that Farm Bureau was entitled to a declaratory judgment as a matter of law. He found that the homeowner's policy excluded coverage for any intentional act that causes damage whether the damage was expected or unexpected. He further held that the general liability policy did not provide coverage for any injuries that are the result of an act by the insured that was intended to harm others. Katrina Parker appeals to our court. Mr. and Mrs. Graves did not appeal.

Appellant's argument is that summary judgment was inappropriate because Farm Bureau did have a duty to defend the insureds. Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Castaneda v. Progressive Classic Insurance Co.,* 357 Ark. 345, 166 S.W.3d 556 (2004). In reviewing summary-judgment cases, we determine whether the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Norris v. State Farm Fire & Cas. Co.,* 341 Ark. 360, 16 S.W.3d 242 (2000). The moving party always bears the burden of sustaining a motion for summary judgment. *Youngman v. State Farm Mut. Auto. Ins. Co.,* 334 Ark. 73, 971 S.W.2d 248 (1998). Where there are no disputed material facts, our review must focus on the trial court's application of the law to those undisputed facts. *See id.* When the facts are not at issue but possible inferences therefrom are, we will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds differ on those hypotheses. *Flentje v. First National Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000).

The law regarding construction of an insurance contract is well settled. Once it is determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates the coverage. *Norris v. State Farm Fire & Cas. Co., supra.* Exclusionary endorsements must adhere to the general requirements that the insurance terms must be expressed in clear and unambiguous language. *Id.* If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. *Elam v. First Unum Life Ins. Co.,* 346 Ark. 291, 57 S.W.3d 165 (2001). On the other hand, if the language is ambiguous, we will construe the policy liberally in

favor of the insured and strictly against the insurer. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Harasyn v. St. Paul Guardian Ins. Co.,* 349 Ark. 9, 75 S.W.3d 696 (2002). Whether the language of the policy is ambiguous is a question of law to be resolved by the court. *Id.*

In this case, the trial court was called to apply two exclusionary clauses in the respective policies of insurance. The clause contained in the homeowner's policy read in relevant part that:

[C]ertain types of losses are not covered by your policy. . . . [W]e do not cover: . . . bodily injury or property damage caused by intentional acts or at the direction of you or any covered person. The expected or unexpected results of these acts are not covered[.]

Another such clause was enumerated in the general liability policy, stating in relevant part:

This policy does not apply . . . to injury, sickness, disease, death or destruction of property arising out of an act by any insured that is intentionally designed to do harm to others.

Moving to the application of the undisputed facts, seen in the non-movant's most favorable light, we hold that the trial court did not err in entering summary judgment for Farm Bureau on the homeowner's policy. When construing insurance policies, where terms of the policy are clear and unambiguous, the policy language controls, and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms. *Smith v. Shelter Mut. Ins. Co.,* 327 Ark. 208, 937 S.W.2d 180 (1997). An insurer may contract with its insured upon whatever terms the parties may agree upon, which are not contrary to statute or public policy. *Shelter Gen. Ins. Co. v. Williams,* 315 Ark. 409, 412, 867 S.W.2d 457, 458 (1993). Contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in light of their general object and purpose. *Sweeden v. Farmers Ins. Group,* 71 Ark. App. 381, 30 S.W.3d 783 (2000).

The duty to defend is broader than the duty to indemnify. *See Murphy Oil USA, Inc. v. Unigard Security Ins. Co.,* 347 Ark. 167, 61 S.W.3d 807 (2001). When making the determination of duty to defend, we look to the allegations made against the insured. *Id.* However, in the present appeal, the fundamental question is whether the ultimate duty to indemnify is triggered, because Parker is an interested party in that outcome. Thus, the real issue on appeal is whether the trial court erred in granting summary judgment, declaring that the exclusions were unambiguous and effective to exclude coverage for this event.

As alleged in appellant Parker's complaint, she contended that Mr. Graves provoked a confrontation with Mr. Parker and maliciously discharged a firearm in order to inflict fatal injuries upon Mr. Parker with knowledge that such discharge would create an appreciable risk of harm to Mrs. Parker. In her answer to Farm Bureau's motion for summary judgment, appellant Parker stated that Mr. Graves intended to fire his rifle at Mr. Parker but not with the intent to cause harm to her (Mrs. Parker). Also, appellant clarified her accusation to be that Mr. Graves acted intentionally toward Mr. Parker but negligently toward her. She added that the act of shooting the dogs was a reckless and negligent act that was the proximate cause of her injuries, adding distance between

the primary cause of her injuries—the shot toward Mr. Parker.

This case differs significantly from *Talley v. MFA Mutual Ins. Co.*, 273 Ark. 269, 620 S.W.2d 260 (1981), cited by appellant. In *Talley*, the policy excluded any "bodily injury . . . which is either expected or intended from the standpoint of the insured." Therefore, the question of whether unintended or unexpected injuries were excluded was not explicit in the policy. Years later, our supreme court admonished insurance companies that exclusionary language for unintended or unexpected injuries from intentional acts could be included in the policy, if the insurer so chose to include those terms. *See Norris v. State Farm Fire & Cas. Co.*, *supra*. The *Norris* opinion went on to give an example of how to word such an exclusion. The homeowner policy exclusion we consider today explicitly excludes "injury or property damage caused by intentional acts or at the direction of you or any covered person. The expected or unexpected results of these acts are not covered[.]" This complies with the directive of our supreme court, and it is unambiguous.

Viewing appellant's allegations most generously to her, appellant's lawsuit is based upon injuries caused by the unexpected result of Mr. Graves's intentional act, whether that be in shooting in Mr. Parker's direction or in setting a dangerous confrontation in motion. We have no hesitation in holding that summary judgment was properly granted to Farm Bureau with regard to the homeowner policy.

▉▉▉ We next consider the general liability exclusion and hold that there exists ambiguity in the language, rendering it susceptible to more than one reasonable construction precluding summary judgment. Farm Bureau did not specifically set forth language in that provision to exclude unintended results of intentional acts as it did in the Graves's homeowner's policy, and as was discussed in the *Talley* and *Norris* cases. The policy's exclusion of an "injury . . . arising out of an act by any insured that is intentionally designed to do harm to others" could reasonably be construed to only exclude injuries to the "others" intended to be harmed, rather than to any person, whether such person was the intended victim or not, as contended by Farm Bureau.

Moreover, we believe that viewing the evidence in the light most favorable to Mrs. Parker, it could be reasonably concluded that Mr. Graves acted intentionally to shoot in self defense but not necessarily with the design to do harm. Thus, there is some question on whether the facts fit within "an act . . . intentionally designed to do harm to others," even if the exclusion otherwise complied with the *Norris* case. Both of these fundamental flaws lead us to the conclusion that summary judgment, declaring that Mrs. Parker's injury was clearly and unambiguously excluded under the general liability policy, was improper and must be reversed.

Affirmed in part; reversed and remanded in part.

VAUGHT, C.J., and GRUBER, J., agree.