
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-16-512

|  |  |
|---|---|
| CARL WILLIAMS AND BONNETTA WILLIAMS<br>APPELLANTS | Opinion Delivered January 25, 2017<br><br>APPEAL FROM THE DESHA COUNTY CIRCUIT COURT [NO. 21CV-14-71-1] |
| V. | HONORABLE SAM POPE, JUDGE |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY<br>APPELLEE | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellants Carl and Bonnetta Williams appeal the April 22, 2016 order of the Desha County Circuit Court granting summary judgment in favor of appellee Allstate. Appellants argue that the court erred in granting summary judgment because there were genuine issues of material fact still remaining. We find no error and affirm.

The facts necessary to understand the instant case are as follows. Carl Williams was driving his vehicle in a northerly direction on U.S. Highway 65 in Mitchellville, Arkansas, on June 28, 2012, when a vehicle owned and driven by Lewis Edward Phoenix pulled beside Carl, and Laron Marco Gray shot Carl twice in the left side pelvic area. Phoenix and Gray fled the scene, and Carl drove himself to the hospital. As a result of the shooting, Carl incurred medical expenses and damages to his vehicle. Appellants filed a complaint against

Phoenix and Gray on June 20, 2014, seeking compensatory, punitive, and other damages.[1] Appellants filed a motion for default judgment against Phoenix and Gray on October 23, 2014.[2] Appellants filed an amended complaint on January 7, 2015, naming appellee as a defendant. In the amended complaint, appellants alleged that they had uninsured motorist insurance (UM) with appellee at the time of the shooting and that Carl had made a demand for payment under the UM section of the policy. However, Carl contended that Allstate failed and refused to pay anything in breach of its contractual obligation as per the policy. Thus, appellants sought to be awarded judgment against appellee for policy limits of the UM as well as statutory reasonable attorney's fee and interest. Allstate filed an answer to the complaint on January 26, 2015, essentially denying the material allegations in appellants' complaint. It put forth several affirmative defenses and asked that appellants' complaint against it be dismissed.

Allstate filed a counterclaim for declaratory judgment on June 3, 2015, asking the court to declare that the UM coverage did not extend to the incident complained of by appellants. It included a copy of the policy in question. Appellants filed an answer to Allstate's counterclaim on July 29, 2015, denying the material allegations and asking the court to deny Allstate declaratory judgment and to declare that the policy covered the injuries and damages complained of. Allstate filed an amended counterclaim on September 8, 2015, asking that the court declare that the hospital and medical benefits as well as the UM coverage under the

---

[1]Bonnetta sought damages for loss of consortium in excess of $75,000.

[2]A default judgment on liability was entered on January 9, 2015, against Phoenix and Gray, reserving damages.

policy did not cover the June 28, 2012 incident. Appellants filed an answer on September 17, 2015, again, denying the material allegations and asking the court to find that the injuries and damages were covered by the policy.

Allstate filed a motion for summary judgment and supporting brief on February 10, 2016, alleging that there were no genuine issues of material fact in this case and that it was entitled to judgment as a matter of law. According to Allstate, appellants' claimed bodily injuries and property damage were the result of an intentional shooting of Carl by Gray and Phoenix, and an intentional shooting did not constitute an "accident" as found in appellants' policy with Allstate. It also denied that Carl's damages arose "from the use of a motor vehicle as a motor vehicle" or "out of the ownership, maintenance or use of an uninsured auto" as required by the policy. Additionally, Allstate contended that there was no causal relationship or connection between Carl's claimed bodily injuries and property damage and the use of a motor vehicle. Appellants filed a response and accompanying brief on March 7, 2016,[3] contending that since Carl was shot while using his vehicle by someone in another vehicle in use, the injuries and property damages sustained were caused by the respective use of the autos and were directly related to such uses. Additionally, appellants argued that Carl was caught by surprise when he was shot, thus, making the shooting an "accident" from Carl's perspective. Allstate filed a response on March 18, 2016, arguing that appellants had failed to meet proof with proof and that Allstate's summary-judgment motion should be granted.

---

[3]Appellants asked for and received an extension of time to respond to the summary-judgment motion.

The court entered a letter opinion on April 22, 2016, which it incorporated into the order granting summary judgment entered that same day. The court dismissed Allstate from the proceeding. The court included a Rule 54(b) certification so that appellants could appeal. This timely appeal followed.

A trial court grants summary judgment when a party is entitled to judgment as a matter of law.[4] An issue involving a question of law is reviewed de novo and is given no deference on appeal.[5] If the language of an insurance policy is unambiguous, we give effect to the policy's plain language without resorting to the rules of construction, but if the language is ambiguous, we construe the policy liberally in favor of the insured and strictly against the insurer.[6] Policy language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation.[7] Whether the language of the policy is ambiguous is a question of law to be resolved by the court.[8]

Allstate's policy provides medical and hospital benefits coverage VC in Part II as follows:

> We will pay to or on the behalf of an injured person all reasonable and necessary expenses incurred within 24 months after the date of the accident for medical treatment, products, and services actually rendered or furnished.

---

[4]*Humphries v. Nationwide Mut. Ins. Co.*, 97 Ark. App. 125, 245 S.W.3d 156 (2006).

[5]*Travelers Cas. & Surety Co. of America v. Cummins Mid–South, LLC*, 2015 Ark. App. 229, 460 S.W.3d 308.

[6]*Humphries, supra.*

[7]*Id.*

[8]*Harasyn v. St. Paul Guardian Ins. Co.*, 349 Ark. 9, 75 S.W.3d 696 (2002).

SLIP OPINION

> Ambulance, hospital, medical, dental, surgical, ... are covered. Treatment and services rendered in accordance with a recognized religious method of healing are also covered. Payments will be made only when bodily injury is caused by an accident arising from the use of a motor vehicle as a motor vehicle. Expenses for hospital room accommodations are limited to semiprivate room rates.

An injured person is defined under the policy as "you or a resident relative who sustains bodily injury, sickness, disease, or death arising out of the use of a motor vehicle." The policy provides UM coverage SS in Part V as follows:

> If a limit of liability is shown on your Policy Declarations for Coverage SS, we will pay those damages that an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of:
>
> 1. bodily injury sustained by an insured person, and
>
> 2. property damage. Property Damage is covered only if a separate limit is shown on the Policy Declarations for Uninsured Motorist Insurance – Property Damage. The first $200 of property damage is not covered. We will not pay for property damage cause by an underinsured motor vehicle.

. . . .

> We will not pay any punitive or exemplary damages which are damages which may be imposed to punish a wrongdoer and to deter others from similar conduct.
>
> The bodily injury or property damage must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto.

Appellants contend that since Carl was using his vehicle at the time he was shot by someone in an uninsured vehicle in use, the UM portion of the policy with Allstate should have covered his injuries and property damages and that the trial court erred by granting Allstate summary judgment. Appellants further argue that since Carl had no way of knowing that he was going to be shot, it was an accident from his perspective even though he was intentionally shot. Finally, appellants claim that summary judgment should not have been

5

granted since "accident," "arising from the use of a motor vehicle," and "arising out of the use of" are not defined in the policy and are ambiguous and susceptible to more than one reasonable interpretation. Allstate contends that no error was committed and that the trial court properly granted it summary judgment.

Our supreme court has held that the term "arising out of," when used in the context of an uninsured motorist provision, means "causally connected with"—a phrase much broader than "proximately caused by,"[9] but less than "but-for" causation.[10]

In *Hartford Fire Insurance Company v. State Farm Mutual Automobile Insurance Company*,[11] the court applied the "causally connected with" standard in the context of an insured motorist provision. In that case, two children were playing in a recreational vehicle parked beside a house. The children began playing with a loaded .22 caliber pistol that was stored in the vehicle. The gun accidentally discharged, killing one of the children. After Hartford paid out a settlement under a homeowner's insurance policy, Hartford sought contribution from State Farm, the motor-vehicle insurer. The trial court found that Hartford was not entitled to indemnity from State Farm because the shooting was not "causally connected with" the operation of the automobile and thus "did not arise out of the ownership, maintenance or use" of the vehicle as required by State Farm's policy. Our supreme court affirmed, noting that the accident could just have easily occurred in a field, in the driveway, or in a hunting

---

[9] *State Farm Mut. Auto. Ins. Co. v. LaSage*, 262 Ark. 631, 559 S.W.2d 702 (1978).

[10] *Hisaw v. State Farm Mut. Auto. Ins. Co*, 353 Ark. 668, 122 S.W.3d 1 (2003).

[11] 264 Ark. 743, 574 S.W.2d 265 (1978).

lodge. The fact that the person discharging the pistol was inside the vehicle at the time of the accident did not make the injury one "arising out of the ownership, maintenance, or use" of the camper.

In *Carter v. Grain Dealers Mutual Insurance Company*,[12] two men were riding home from a party together in a car. The passenger was highly intoxicated, and at some point, the driver pulled over to the side of the road to allow the passenger to vomit. After vomiting, the passenger grabbed a gun from under the car seat and began shooting at the driver. Both driver and passenger ended up dead from gunshot wounds. After the driver's family sought recovery under the driver's uninsured motorist insurance, we upheld the trial court's granting of summary judgment in favor of the insurance company. We noted that there must be a causal connection between the injury and the operation of the vehicle for there to be coverage. The only connection between the driver, Carter's, death and the use of the vehicle was that Carter and Kight, the passenger, happened to be in the vehicle when the shooting occurred. We held that they could have just as easily been outside of the vehicle.

In *Hisaw*,[13] our supreme court examined whether an uninsured motorist provision covered an injury suffered by a volunteer firefighter who was injured by an inadvertently slammed van door while at the scene of an automobile accident. The intoxicated driver of the van had lost control of the vehicle and run off the road into a ditch. Hisaw, a volunteer firefighter, was called to the accident scene. After the paramedics had removed the driver and

---

[12] 10 Ark. App. 16, 660 S.W.2d 952 (1983).

[13] *Supra.*

passenger from the van, Hisaw attempted to retrieve the vehicle's registration information which was located on the van's floor. As he was leaning into the van through the middle back door, the door swung shut due to the force of gravity and hit Hisaw in the back, causing injuries to his neck and spine. Hisaw sued, arguing that his injury was proximately caused by Stuthers' drunken driving and the ensuing car wreck. The trial court granted summary judgment in favor of the insurance company, noting that too much time had passed between the accident and the injury to Hisaw for Hisaw's injury to be causally linked to the use of the van. Our supreme court reversed, concluding that the "but for" analysis was not appropriate for determining the meaning of the phrase "arising out of" in the context of an automobile insurance policy.

There is no Arkansas case that is squarely on point with the facts of this case. However, we are guided by *Hartford Fire* and *Carter*. Carl's injuries and property damages did not arise out of the use of Phoenix's vehicle. Although both vehicles were in use at the time of the shooting, the shooting could have just as easily taken place outside of the vehicles. Thus, there is no causal connection between the vehicles' use and the shooting. Additionally, the shooting of Carl was an intentional act, not an accident as contemplated by the policy. Accordingly, we hold that the trial court properly granted Allstate's summary-judgment motion as there were no material issues of fact needing to be resolved.

Affirmed.

GRUBER, C.J., and GLADWIN, J., agree.

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellants.

*Barber Law Firm PLLC*, by: *J. Cotten Cunningham* and *M. Evan Stallings*, for appellee.