8. Collapse of buildings or any part of a building. Collapse does not include settling, cracking, shrinkage, bulging, or expansion. This peril is limited to damage caused by:
a. a named peril insured against in the policy; or
b. the weight of contents, equipment, animals, or people; or
c. the weight of rain, ice, snow, or sleet on a roof
....
PLEASE NOTE: The peril "Collapse of Buildings" may be excluded and not apply to some of the farm building(s) and/or farm building contents insured on your policy. Please check your latest policy Declaration to determine if coverage is excluded.
(Emphasis in the original.)
On July 6, 2015, Farm Bureau filed a complaint for declaratory judgment requesting that the circuit court declare that Hopkins's insurance policy does not cover his loss. Farm Bureau asserted that although "collapse" is the eighth of the nine named perils covered by the insurance policy, it denied Hopkins's claim based on the clear language in the policy that limits the collapse coverage to damage caused by "a.
*260 a named peril insured against in the policy; or b. the weight of contents, equipment, animals, or people; or c. the weight of rain, ice, snow, or sleet on a roof." None of these causes were the cause of the collapse; thus, Farm Bureau argued, the loss was not covered by the policy.[3] Alternatively, Farm Bureau argued that exclusions in the policy preclude coverage of certain water-damage related loss. The policy sets forth that
we do not cover loss resulting directly or indirectly from the following causes, and such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
1. Water damage, meaning:
a. flood, surface water, waves, tidal water, or overflow of a body of water.
....
c. water on or below the surface of the ground, regardless of its source. This includes water which exerts pressure on or flows, seeps, or leaks through any part of a building or any other structure....
2. [L]andslide, mud slide or any other earth movement resulting from natural or artificial causes.
....
4. [P]ressure of water ... to pavement, patio, foundation, or retaining wall....
Hopkins answered and counterclaimed that Farm Bureau breached its contract by refusing to cover the loss. Hopkins asserted that he obtained collapse coverage on his hunting lodge because of the structure's close proximity to the Arkansas River, and he had been aware that the bank could recede, which could cause the structure to collapse. Hopkins explained that he contacted Farm Bureau agent, Chris Lane, discussed the risk of collapse with him, and obtained an insurance policy from him that covered "all risks to the Insured Structure, especially collapse for any reason." Hopkins points to the notation on the declaration page that collapse coverage is included in the policy, and he argues that this indicates that collapse for any reason is covered pursuant to his agreement with Lane.
Hopkins also argued that, to the extent the policy does not cover his loss, the policy should be reformed to reflect Lane's representation that collapse for any reason is covered and that Farm Bureau is bound by Lane's agreement. Hopkins requested that the circuit court dismiss Farm Bureau's request for declaratory judgment, declare coverage in his favor, award him any related interest and penalties, and award him attorneys' fees.
Farm Bureau responded to the counterclaim by denying Hopkins's allegations asserting that Lane is an independent contractor and not an employee of Farm Bureau.[4]
Hopkins filed a motion for partial summary judgment in which he argued that the insurance policy unambiguously covers the loss of the hunting lodge. Alternatively, he asserted that the language in the policy is ambiguous, and the policy must be construed in his favor. Hopkins stated that there are no genuine issues of material *261 fact and that he is entitled to judgment as a matter of law.
Farm Bureau responded that Hopkins had not made a prima facie showing that his loss fell within the coverage of the policy, and Farm Bureau also asserted that Hopkins's loss was precluded from coverage by exclusions in the policy. Farm Bureau stated that the cause of collapse was undisputed by the parties, and it attached Harris's written assessment that the flow of the river eroded the ground in front of and under the lodge's foundation, which caused the collapse. Hopkins denied that the exclusions in the policy applied in this case.
At the hearing on the motion, Hopkins argued that the policy limits collapse coverage to perils that are named in the policy and that "collapse" is one of them; thus, collapse for any reason is covered. Alternatively, Hopkins argued that the policy is ambiguous because "there is a section that defines what collapse is and then another section that attempts to limit that definition. But in stating that collapse is a named peril, it provides coverage for all collapses and does not limit anything." In short, Hopkins argued that if Farm Bureau wanted to exclude certain types or causes of collapse, it should have done so in unambiguous language.
In addition to its assertion that the language of the policy regarding collapse coverage unambiguously does not cover Hopkins's type of collapse, Farm Bureau argued that even if the collapse had been due to the weight of the contents of the building, the weight of precipitation on the roof, or one of the other named perils, the insured still has to make it through all of the exclusions before coverage applies. Farm Bureau explained that it was unrebutted that the collapse was caused by the "water damage" exclusion to the policy:
In fact, it [the collapse] was caused by landslide, earth movement resulting from natural causes, pressure of water to the foundation-and that's exactly what Al Harris found-that the flow of the river cut into the concrete foundation and caused the structure to fall in the river.
Hopkins responded that the engineer's report was hearsay, that Farm Bureau had not shown that any exclusions apply, and that the exclusions set forth in the policy are ambiguous. Farm Bureau asserted that Harris's findings had been properly included in the record. The court did not rule on whether the report was hearsay.
After the hearing, the circuit court entered an order awarding partial summary judgment to Hopkins and found the following:
Building collapse is one of the named perils in the policy, and the Declaration Page of the insurance policy states that collapse coverage is included. The policy does not clearly exclude the collapse of the Defendant's hunting lodge. If the language of a policy is ambiguous, then it must be strictly construed against the insurer. Tri-Eagle Enterprises v. Regions Bank , 2010 Ark. App. 64, 7, 373 S.W.3d 399, 404 (2010). Further, as there are no genuine issues of material fact that the Defendant's property owner's insurance policy covers the loss of the Defendant's hunting lodge, the Defendant is entitled to partial summary judgment as a matter of law.
Farm Bureau filed a motion to reconsider that was deemed denied. Farm Bureau timely filed a notice of appeal.[5]
*262 II. Standard of Review and Applicable Law
The law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. Harrisburg Sch. Dist. No. 6 v. Neal , 2011 Ark. 233, 381 S.W.3d 811. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. Id.
On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. Campbell v. Asbury Auto., Inc. , 2011 Ark. 157, 381 S.W.3d 21. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Id. Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC , 2012 Ark. 157, 400 S.W.3d 701.
Language is ambiguous if there is doubt or uncertainty as to its meaning, and it is fairly susceptible to more than one equally reasonable interpretation. Humphries v. Nationwide Mut. Ins. Co. , 97 Ark. App. 125, 245 S.W.3d 156 (2006). Ordinarily, the question of whether the language of an insurance policy is ambiguous is one of law to be resolved by the court. Harasyn v. St. Paul Guardian Ins. Co. , 349 Ark. 9, 75 S.W.3d 696 (2002). The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends on disputed extrinsic evidence. Elam v. First Unum Life Ins. Co. , 346 Ark. 291, 297, 57 S.W.3d 165, 170 (2001). Thus, when the issue of ambiguity may be resolved by reviewing the language of the contract itself, it is the circuit court's duty to make such a determination as a matter of law. Id. Provisions of an insurance policy are construed most strongly against the insurance company, that prepared it. Zulpo v. Farm Bureau Mut. Ins. Co. of Ark. , 98 Ark. App. 320, 255 S.W.3d 494 (2007). If the language of the policy is susceptible to two interpretations-one favorable to the insured and one favorable to the insurer, then the interpretation most favorable to the insured must be adopted. Id.
III. Points on Appeal
A. Collapse Coverage
For its first point on appeal, Farm Bureau asserts that the circuit court erred in finding the language of the policy ambiguous because the policy is clear that it covers collapse of the structure only when the collapse is caused by a named peril, *263 the weight of the contents of the building, or the weight of precipitation on the roof. Hopkins did not show that his loss was caused by any of those things; thus, the loss is not covered. We agree and reverse.
Hopkins's insurance policy covering the hunting lodge sets forth nine "named perils" that it insures against. "Collapse" is number eight, and it sets forth the following:
PERILS WE INSURE AGAINST
8. Collapse of buildings or any part of a building. Collapse does not include settling, cracking, shrinkage, bulging, or expansion. This peril is limited to damage caused by:
a. a named peril insured against in the policy; or
b. the weight of contents, equipment, animals, or people; or
c. the weight of rain, ice, snow, or sleet on a roof
There is no ambiguity in the above definition of "collapse." The named peril is clearly limited to collapse caused by any of the named perils, by the weight of the contents of the structure, or by the weight of precipitation on the roof. It is unambiguous that "collapse," as one of the nine named perils, will be covered if it fits within the policy's definition of "collapse." The language does not indicate that all collapse, for any reason, is covered by the policy. Furthermore, Hopkins failed to present evidence that his loss was due to one of the three causes named above, and it is the insured's burden to make a prima facie case that the damage is a direct loss covered under the insurance policy. Home Mut. Fire Ins. Co. v. Jones , 63 Ark. App. 221, 228, 977 S.W.2d 12, 15 (1998) (A direct loss is one proximately caused by the hazard insured against.). We hold that the language of the policy regarding "collapse" as a named peril is unambiguous, and it is susceptible to the one reasonable interpretation described above.
Farm Bureau also addresses Hopkins's argument below that he and agent Chris Lane agreed that collapse for any reason is covered by the policy, and the declaration-page notation that collapse coverage is included is proof of that agreement. Farm Bureau asserts that within the definition of "collapse," the policy clearly states that Farm Bureau does not offer collapse coverage for certain types of structures and that it clearly directs the policyholder to check the declaration page to make sure his or her structure is covered for collapse. The policy sets forth the following:
PLEASE NOTE: The peril "Collapse of Buildings" may be excluded and not apply to some of the farm building(s) and or farm building contents insured on your policy. Please check your latest policy Declaration to determine if coverage is excluded.
(Emphasis in the original.)
Farm Bureau argues that not only is there an unambiguous reason for the notation on the declaration page that Hopkins's policy includes collapse coverage, the notation does not in any way alter the definition of "collapse." The provision in the policy clearly explains the standard way in which Farm Bureau informs the policyholder whether collapse coverage is included in the policy, and there is no indication that Lane included an endorsement for collapse for any reason in the policy.
Hopkins failed to meet his burden of making a prima facie showing that the collapse of his hunting lodge was caused by a named peril, the weight of the contents of the building, or the weight of precipitation on the roof of the structure. Accordingly, we need not reach the issue *264 of whether the policy's exclusions to coverage apply.
Reversed and remanded.
Klappenbach and Murphy, JJ., agree.

Farm Bureau filed an amended complaint for declaratory judgment that included a certified copy of the insurance policy and incorporated the original complaint.

Farm Bureau filed a third-party complaint against Lane seeking contribution and/or indemnity from Lane based on his alleged representations to Hopkins. Lane responded that the policy contains a special endorsement for collapse coverage that includes collapse for any reason; thus, the exclusions in the policy are inapplicable.

After the judgment was entered, Farm Bureau, Randy Hopkins and Chris Lane filed a joint stipulation in which the parties agreed that Farm Bureau's declaratory judgment is resolved by the circuit court's declaration of coverage for Hopkins's loss and that Hopkins's reformation claim is moot pursuant to the declaration of coverage. The parties acknowledged that if the circuit court's decision is overturned, then Hopkins may pursue the policy-reformation claim, and Farm Bureau may pursue its contribution and indemnity claims against Lane. The joint stipulation also resolved the issue of Hopkins's damages, penalties against Farm Bureau, and prejudgment interest. In this appeal, Lane and Hopkins each submitted a separate appellee's brief. Lane asserts that Farm Bureau did not identify Lane as a party to its appeal and did not make any arguments as to him below. Lane reiterates Hopkins's assertion that the policy covers collapse for any reason, or alternatively, that the policy is ambiguous. Lane also argues that the exclusions in the policy do not apply to the facts of this case.